```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

              Case No. 09-80854-Civ-DIMITROULEAS/SNOW
```

SCOTT W. BACKHUS,

    Plaintiff,

    v.

TEJO LIMITED, INC., J&L OF THE PALM
BEACHES, INC., and THEODORE RUSSO,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on Plaintiff's Motion to Amend Judgment (Docket Entry 42), which was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

<u>I. PROCEDURAL HISTORY</u>

The complaint was filed June 8, 2009, seeking unpaid wages for overtime work, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. The complaint alleges the plaintiff was discharged on May 16, 2009, after threatening "to go to the Department of Labor to see what his rights were" regarding overtime pay. (DE 1, ¶¶ 33 and 34) The defendant filed an answer. (DE 5) on December 2, 2009, after engaging in mediation, the parties filed a Stipulation for Dismissal without prejudice, including a Settlement Agreement and General Release signed by the parties. On December 2, 2009, the Court approved the stipulation for dismissal and the Settlement Agreement and General Release and dismissed the case without prejudice, retaining jurisdiction to enforce the terms of the Settlement Agreement and General Release,

if necessary.

On January 14, 2010, the plaintiff filed the instant motion, asserting that the defendant had failed to comply with the payment provision of the Settlement Agreement, despite a demand for payment. The Court ordered the parties to file supplemental memoranda of law, and the motion is now fully briefed and ripe for consideration.

## II. RECOMMENDATIONS OF LAW

Federal district courts have authority to enforce settlement agreements which have been approved by court order. In re Chira, 567 F.3d 1307 (11th Cir. 2009); Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000). The court must use state contract law when construing and enforcing a settlement agreement. Resnick, 227 F.3d at 1350.

The Settlement Agreement and General Release states:

> **1. Consideration.** In consideration for the execution by Scott W. Backhus of this Agreement and compliance with the promises made herein, TEJO Limited, Inc., J & L of the Palm Beaches, Inc. and Theodore Russo will pay Scott W. Backhus a total sum of Fifteen Thousand Dollars ($15,000.00), allocated and payable as follows:
> **(a)** On or before December 31, 2009, TEJO Limited, Inc., J & L of the Palm Beaches, Inc. and Theodore Russo will pay as a first installment $10,000.00 payable to the Trust Account of Robert Anthony Bogdan.
> **(b)** On or before January 31, 2009 [sic], TEJO Limited, Inc., J & L of the Palm Beaches, Inc. and Theodore Russo will pay as a second installment $5,000.00 payable to the Trust Account of Robert Anthony Bogdan.
> . . .

>    **(d)**   . . . Time is of the essence. Defendants further agree that any failure by defendants to make either of the installment payments described herein above will be considered a default under the terms of this Agreement and will entitle the plaintiff, upon ex parte motion to this Court, accompanied and supported by an affidavit of Plaintiff, to entry of a default judgment in favor of Plaintiff and against each of the Defendants, jointly and severally, for Thirty-five Thousand Dollars ($35,000.00) less any amount previously paid, if any, plus interest thereon at the legal rate of interest, as well as all costs and reasonable attorney's fees incurred in securing such judgement. Defendants agree to entry of judgment with the Court for such amount in the event of any default.

(DE 14-1, pp. 1-2) The motion includes that plaintiff's affidavit stating that the defendants failed to pay the first installment required by the Settlement Agreement. The plaintiff asks the Court to enforce the terms of the Settlement Agreement signed by the parties and approved by Order of the Court.

The defendants' response argues that the plaintiff engaged in bad faith and fraudulent misrepresentation during mediation by failing to disclose that he had provided a sworn statement to the Sheriff's Office during an investigation of a complaint of vehicle title fraud by Mr. Russo.[1]  The defendants contend that the

---

[1] The Probable Cause Affidavit states that after receiving a complaint from the confidential source, the detectives assembled documents from the Department of Motor Vehicles. On July 7, 2009,

plaintiff caused problems for Mr. Russo through this totally unrelated claim. Owing to the charges lodged against Mr. Russo, he is now unable to make the payments set forth in the Settlement Agreement. Indeed, he would not have entered into the settlement agreement had he known that the plaintiff had previously spoken to the police and likely would be a witness in any criminal case against Mr. Russo.

The plaintiff's reply contends that the Settlement Agreement states "This agreement embodies the entire agreement and understanding of the parties hereto and of all of the terms and conditions with respect to the matters discussed herein . . .." Nothing in the Settlement Agreement contains a requirement, or places a condition, that the plaintiff had never spoken to the police. Thus the plaintiff had no obligation to disclose that he had responded to a police inquiry about what the defendant concedes is a 'totally unrelated' matter.

---

they spoke to Scott Becklus [sic], a former employee of Mr. Russo, who provided a sworn statement describing work Mr. Russo performed in 2008 on a Cadillac Escalade owned by Mr. Russo's girlfriend. Mr. Backhus stated that Mr. Russo replaced the vehicle's dashboard "cluster," included the odometer, which changed the odometer reading from approximately 119,000 miles to approximately 32,000 miles. Mr. Russo prepared a false repair order showing that he had replaced the engine and transmission. Mr. Russo then filed a mechanic's lien on the car for non-payment for the work, and subsequently sold the vehicle. The investigation later determined that the car had been purchased by a retired police officer. The vehicle was seized on July 10, 2009, and was inspected by the investigators, who confirmed that the engine had not been replaced, but that the odometer had been. On September 28, 2009, the Sheriff's Office submitted the Probable Cause Affidavit to arrest Mr. Russo for grand theft auto, title fraud, odometer fraud and perjury. (DE 18-1)

4

The defendants do not suggest that the plaintiff should not have cooperated in the Sheriff's Office investigation. Rather they contend that he should have disclosed his part in the investigation during the negotiations for the Settlement Agreement. The defendants offer three arguments: obstruction of the defendants' ability to perform the contract; intentional concealment of a material fact, and fraudulent inducement.

A. Obstruction

First the defendants assert that a party who contracts for another to do a certain thing "impliedly promises that he will, himself, do nothing which will hinder or obstruct the other in doing the agreed thing." Casale v. Carrigan & Boland, Inc., 288 So.2d 299, 300 (Fla. 4th DCA 1974). The defendants contend the plaintiff's sworn statement resulted in criminal charges against Mr. Russo which now make it impossible for the defendants to comply with the payments set forth in the Settlement Agreement.

In Casale the plaintiff was a real estate agent who worked for the defendant real estate broker who owned a property for sale. The plaintiff found a buyer for the property, but had not finalized the paperwork for the sale. The plaintiff's contract with the defendant provided that the plaintiff's commission was payable upon submission of the signed sales contract. While the plaintiff was on vacation, the defendant entered into an option contract for the sale with the buyer, thus defeating the plaintiff's right to a

commission on the sale under the terms of the contract. At the trial, the court entered a directed verdict for the defendant, since the plaintiff had not submitted a signed sales contract. The appellate court reversed the directed verdict, noting that a jury might find that the defendant improperly obstructed the plaintiff's ability to comply with the terms of their contract, and should not benefit from his own wrongful acts.

The Court is not persuaded by Casale.  In that case, both parties' actions were directed to the subject matter of the existing real estate commission contract: the completed sale of the property to a buyer which the plaintiff had found.  In the instant case, the defendants challenge the plaintiff's failure to disclose an act the plaintiff performed in a matter which the defendants concede was "totally unrelated" to the plaintiff's FLSA claim. The Sheriff's Office criminal investigation was not related to the plaintiff's statutory civil claims for overtime wages. The plaintiff's July 2007 role in that investigation could not have been intended to improperly prevent the defendants from complying with a Settlement Agreement which had not been negotiated yet. Unlike Casale, the plaintiff here did "nothing which will hinder or obstruct the other in doing the agreed thing."

B. Intentional Concealment of a Material Fact

Second, the defendants contend that the plaintiff's failure to inform them of his role in the police investigation was

an intentional concealment of a material fact, warranting recission of the contract. Billian v. Mobil Oil corp., 710 So.2d 984 (Fla. 1th DCA 1998), review denied, 725 so.2d 1109 (Fla. 1998)  Billian involved non-disclosure of concealed defects in a home which the plaintiff purchased. Because there was a possibility that the plaintiff might not prevail on a contract claim under Florida law, the appellate court considered whether the trial court could instruct the jury on the elements of the equitable remedy of recission to make the plaintiff whole.  The court found that "recission is a harsh remedy which a court of equity will not grant unless 'it clearly appears that the claimant is entitled thereto and has not by his own conduct waived his right to the relief claimed.'" Id. 991, *quoting*, Rood Co. v. Board of Public Instruction of Dade County, 102 So.2d 139, 142 (Fla. 1958).

    The Court finds this case is inapplicable for several reasons.  First, the defendant's criminal case and the plaintiff's FLSA claim for unpaid wages are not related, thus facts material to the prosecution of the criminal case are not material to the claim for wages.  Second, even if the plaintiff's participation in the criminal investigation were deemed to be material to the negotiations leading to the Settlement Agreement, Mr. Russo's alleged conduct leading to the criminal charges would waive his right to the equitable remedy of recission. Mr. Russo cannot avoid payment of wages owing simply because his former employee became

7

involved in the investigation of Mr. Russo's allegedly fraudulent business practices.

C. Fraudulent Inducement

Third, the defendants assert that at the time of execution of a contract, if a party promises to perform an act in the future to induce the other party to enter into the contract, but has a secret undisclosed intent not to perform the act, the party has fraudulently induced the other party to enter into the contract. This fraud warrants recission in equity even if the promised act did not constitute the entire consideration. Street v. Sugarman, 307 So.2d 883 (Fla. 3d DCA 1974), cert. denied, 315 So.2d 196 (Fla. 1975).  The defendants contend that when the plaintiff negotiated and executed the Settlement Agreement, he had already violated the non-disparagement clause[2] and intended to do so again if called as a witness in the criminal case.  The plaintiff's reply asserts that giving truthful testimony to the police does not constitute disparaging remarks.

To support a request for recission of the Settlement Agreement, the defendants have the burden of demonstrating that he plaintiff's sworn statement constituted disparaging remarks prohibited by the Settlement Agreement.  The defendants have not met this burden.  Under Florida law, the term disparagement generally

---

[2] The clause states "The parties mutually agree not to make disparaging remarks about one another, the business, affairs, practices, or performances of one another." (DE 14-1 , ¶ 7)

is used in connection with publication of false statements causing foreseeable damage to the value of real property. Salit v. Ruden McClosky, Smit, Schuster & Russel, P.A., 742 So.2d 381, 385-386 (Fla. 4th DCA 1999). It is one of a "group of torts recognized under the collective title of 'injurious falsehood . . ..'" Id. at 386; Calloway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp., 831 So.2d 204, 209 (Fla. 4th DCA 2002) citing, Salit. Personal defamation is another form of injurious falsehood. A disparagement claim and a personal defamation claim have common elements, including the publication of an injurious falsehood. Calloway, 831 So.2d at 209.

The evidence provided by the defendants, the Probable Cause Affidavit, demonstrates that the information in the plaintiff's sworn statement was confirmed by the subsequent examination of the vehicle by the Sheriff's Office. The defendants have not shown that the plaintiff published false information which damaged the defendants. Accordingly, the Court rejects the defendants' third argument.

D. Enforcement of the Settlement Agreement

The plaintiff has established the elements necessary to enforce the Settlement agreement under the terms set forth in paragraph 1.(d). The plaintiff's affidavit establishes that the defendants did not make the first installment payment. The defendants do not dispute this fact.

The defendants have not demonstrated any legal or factual basis to void the contract, find the plaintiff in breach of the contract or defeat the contract through the equitable remedy of recission.

The Court has the power to enforce a Settlement Agreement signed by the parties and approved by Order of the Court. The Court should grant the plaintiff's motion to enforce the Settlement Agreement, and enter an amended judgment in the amount of $35,000.00 against each of the defendants, jointly and severally, plus interest thereon at the legal rate, as well as all costs and reasonable attorney's fees incurred in securing entry of the amended judgment.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Motion to Amend Judgment (Docket Entry 42) be GRANTED and an amended judgment be entered in the amount of $35,000.00 against each of the defendants, jointly and severally, plus interest thereon at the legal rate, as well as all costs and reasonable attorney's fees incurred in securing entry of the amended judgment.

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge.

Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 23rd day of June, 2010.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Robert Anthony Bogdan, Esq. (P)
James R. Merola, Esq. (D)